Finally, we have Hassan against Bondi. May it please the Court, Natasha... Ms. Harnwell-Davis. May it please the Court, Natasha Harnwell-Davis, on behalf of Mr. Mohamed Hassan, I'd like to reserve two minutes for rebuttal. The government has not met its burden to clearly show that the Kentucky State Supreme Court has interpreted the plain text of the statute to equate having reason to believe with intent to deprive. The Kentucky statute of receipt of stolen property is categorically broader than the federal generic theft offense because it contains a less culpable mental state. Well, that's the conclusion, but I wonder how you get there. It seems to me there are two ways to read the language in the Kentucky statute. One is that the reason to believe language refers to what federal courts tend to call inquiry notice. And if it refers to inquiry notice, it doesn't match the elements of the corresponding federal offense. The other thing it might do is refer to what federal courts would call the ostrich inference, that somebody has enough knowledge to be real knowledge and then consciously avoids learning more. So if you have somebody who, if you're a, say, if you're a pawn shop owner, somebody persistently brings you more knickknacks than you might expect to be in a home, but you go out of your way to figure out, not to figure out whether he's a thief, that there might be an inference. So the question is, which way does Kentucky understand language like that? As inquiry notice or as the kind of ostrich intent? It understands it as the, a reasonable person. So not the ostrich. Reasonable person applies to both inquiry notice and the ostrich inference. Okay. The question is, which way does the state Supreme Court understand language like this? Not necessarily in this statute, but in other criminal statutes. Understood, Your Honor. Taking a step back, it's the government's burden. Given the ambiguity. No, this is about the meaning of a state law. No one has any burdens. We figure this out. I would like you to address my question rather than shift to some different issue. Sure. So when you look at footnote 11 of Lawson, the Kentucky Supreme Court has said that the 2000 amendment extended the mental culpability. And then when you look at Benton, where the Kentucky Supreme Court is actually applying the statute to a sufficiency of the evidence question, the Kentucky Supreme Court identifies specific facts that go to the having reason to believe that would put a person on inquiry notice. There is no indication that the Kentucky Supreme Court has interpreted the language to have the ostrich effect. Well, what do you make of Commonwealth versus Griffin? Griffin is not controlling for three reasons, Your Honor. So one, it's in tension with Lawson. Lawson has clearly stated that the 2000 amendment extended the culpable mental state. Two, even if you set aside Lawson, which was decided shortly after the 2000 amendment, you have the fact that the statute was amended to include the culpable mental state. And when you apply basic canons of statutory interpretation, that change indicates that the legislature wanted to change the meaning of the statute. And third is even if Griffin is controlling here, the government's position is that the effect is that it would pull having reason to believe up to the level of knowledge, when in fact, what the effect would be is pulling knowledge down to having reason to believe such that it would not meet the criminal intent to deprive. Can I ask you a question on this? This may surprise you. I actually think Griffin helps you. And here's why. Because there's a part of Griffin that is very odd. The whole reason to believe is part of knowing. That's an odd move. I'll grant you that. But there is a passage in Griffin, and Griffin, of course, comes from the Kentucky Supreme Court. There's a passage in Griffin that says, the phrase or had reason to believe as used in the instructions is within the meaning of the term knowing, right? Okay. But then it says to determine if Griffin acted knowingly, he is held to know that which any reasonable person so situated would have known, period. Okay. That sounds like inquiry notice to me. And it is an objective standard there. Okay. And I thought that the next step in the analysis is, okay, well, what are we comparing it to? What's the federal generic definition? And if the federal generic definition has a subjective component, the Kentucky statute compared with the federal generic definition is broader. It picks up more. And therefore, the final step is to say it's categorically overbroad. But you seem to back off, Griffin. That's how you answered Judge Kirsch. When I read Griffin, I think, doesn't Griffin make it for you? Well, that is the point that I was trying to make. And I think your honor has made my third point more clearly than I did, which is that Griffin can also be read as having the objective inquiry notice. And in that consequence, if you are equating knowledge and having reason to believe, rather than pulling having reason to believe up to the level of actual knowledge, rather what it's doing is pulling knowledge down to the inquiry. Fair enough. I mean, Griffin is all but, it's a grand one page in like five lines. It's a very short decision, your honor. And it's interpreting a different statute. It is the state's highest court. It is. So you have Griffin. And that is a fair interpretation of Griffin. And it's not the exact same statute, but it's analogous in all material ways. Correct, your honor. And now what happens if you put Griffin together with Martin from the Supreme Court of Kentucky in 2003, 15 years after Griffin? I don't recall the facts of Martin, your honor. I do know that we have Lawson saying that the culpable mental state is extended. Martin sounds much more like the federal ostrich inference than Griffin did. And we need to think about both of these. And there may be more. Well, your honor, it is the government's burden to clearly demonstrate. No, it is not a burden to figure out the meaning of a statute. The law is the law. It's not something on which there is a burden. Understood, your honor. In instances where it is ambiguous, the Supreme Court in Montcrieff has said that the tie goes, or unless it is clearly established, then the petitioner prevails. And so if there is a sense of equality in weighing the cases, then Mr. Hassan prevails. I'd like to very briefly address the final clause of the statute, unless the property is retained, received of, or disposed, which goes to a different type of knowledge and intent. A person can possess an object knowing that it was stolen and still intend to give it back to the owner. So when the government tries to import an inferred intent element back into the statute, that's a very odd way of conducting statutory interpretation. I would like to reserve the remainder of my time. Sir, to the counsel. Mr. Sainz. Good morning, your honors. May it please the court. Imran Zaid for the government. This case presents a single and narrow question, which is whether Kentucky's receipt of stolen property offense matches the generic definition of aggravated felony theft. And in particular, whether the Kentucky offense requires knowledge of the stolen nature of the property, which, as both parties agree, is a required element in the generic definition. As we explained in our brief, the Kentucky offense does require knowledge, because the statute includes knowing, so clear knowledge, or with reason to believe, which the Kentucky Supreme Court in Griffin, and I want to take your point on head on, Judge Scudder, which the reason to believe is within the meaning of knowingly, and such that a defendant is held to know that which a reasonable person so situated would have known. And so it sounds, Judge Scudder, like you are taking that language to suggest that it is an objective standard, perhaps, or that it is, I think, the way Judge Easterbrook is understanding it, an inquiry instruction. To us, we would be- Because of the words, any reasonable person. Without question. And I'll be the first to say, when you see the language reasonable, reasonable grounds exist, a reasonable person, all of that suggests possibly being interpreted as an objective standard. But I think, for us, the critical understanding of the language in Griffin is held to know. So that is the Supreme Court saying, from these circumstances, we are still requiring that you are held to know. And if you are unsure about that at all, Judge Scudder, and I have more to say on that, but I want to say that that is reinforced, then, by every case that we cite in our brief from Kentucky post-2000, when that language was then added to this receipt of stolen property statute. So these are cases like Conyers and Benton and Griffith and Franklin, all of which define this statute, this offense, as requiring knowledge of the stolen nature of property. And I'd refer this panel specifically to the Conyers decision, that's the Supreme Court decision, the Kentucky Supreme Court decision of 2017, which sort of most clearly and succinctly cites the elements of this offense as requiring the retention or disposition of property with the knowledge that the property has been stolen. So there's really no question in Kentucky law beyond the language itself. And of course, that is important. But you then need to interpret the language. Judge Easterbrook, as you're making clear, this is a statutory construction question. So you see the language, reason to believe. You think that might suggest it is objective. It might suggest it's subjective, which is what, by the way, this court said in the Cotard decision that we cite on page 16 of our brief. Language like this, language like reasonable grounds to believe, can be interpreted as objective and subjective, or objective or subjective. So the critical question is, what does the relevant jurisdiction do with that language? Here, Kentucky, for all of those cases that we cite in our brief, interpret it as subjective. Some of those aren't even published decisions. Some of those are not, Your Honor, but Griffith, of course, is. Everybody always cites these non-precedential decisions because they can find them electronically, and then they ignore the fact that they're non-precedential. Your Honor, I'll be the first to admit, I have not seen this many non-precedential Supreme Court decisions from the state of Kentucky. My point is broader, and that is, when you see a non-precedential decision, my first reaction is to say, it's non-precedential. Sure. Well, our first point there, Your Honors, was to rely on the Conyers decision. That, of course, is a published Supreme Court decision. But I think, more broadly, our point on what Kentucky's reason to believe must mean is, if it meant anything along the lines of what Petitioner is suggesting, which is a distinct and lesser mens rea, reason to believe, objective standard, you would see that suggestion somewhere, anywhere, in Kentucky state cases, other than the way that you may be reading Judge Scudder, the Griffith decision. You would see a decision that said, you don't need knowledge. All you need is a reason to believe. All you need is objective standard. It's interesting. I hear what you're saying. But when you say, held to know that which any reasonable person, all it is, you ask, what would a reasonable person know? Then you hold the defendant to that. But you are still requiring for them to know. And that's what I— No. You're holding him to that level of knowledge. Well, if there were any uncertainty about that, and I take your point, Judge Scudder, then you would look at what the court has then done with this particular statute— Well, you wouldn't look in these unpublished opinions. The Conyers decision specifically describes the requirement as needing knowledge of the stolen nature of the property. And again, I take your point. But I think if you really did understand that language to be objective, or anything, frankly, less than a subjective knowledge standard, you would see some suggestion, in any case ever, that it only required you to focus on the circumstances of the offense and not on whether the person actually knew. And Petitioner's gone out of his way— The word knowledge? Correct. Knowledge of the stolen nature of the property. And I think a part of— I mean, then it becomes, well, what does it mean? What does it mean? Yes. Well, and the reason I bring up this— It's not—of course it's there. You're 100 percent right. Right. And I don't fault you for relying upon it, but it doesn't go any further. I mean, I'm looking right at it. No, I agree, Your Honor. I think that's why we rely on that in conjunction with Griffin. I do think the point I'm making about the circumstances, because if you had this understanding of it as being objective and less than, then you would see that, even if you use the word knowledge, and I take your point, you would need to still understand what that means, in any decision, unpublished or published, because this is where an unpublished decision can do some sorting out, even if it's not precedential. Where do you rely in a case only on the circumstances surrounding the offense without then proceeding to say this person had knowledge or subjective knowledge? And that's what those cases show. Petitioner's point on the other side, so we've only been talking about Kentucky and knowledge. Now, on the generic definition side, Petitioner makes this point that even if, you know, Kentucky law is what we are describing it as, which is knowledge is the equivalent of reason to believe, that that somehow dilutes the knowledge standard in a way that's unacceptable. We cite several authorities from state and federal courts on pages 2021 of our brief that describe that's not true and that it's flatly incorrect. It is just common evidentiary principles in many jurisdictions to allow, from circumstances and inference, certain circumstantial evidence that somebody did in fact have knowledge. And this is somewhat similar to the point that we're describing with Griffin, is you can rely on objective circumstances to then require that somebody did in fact have knowledge. And again, we've cited several cases to that effect. I think perhaps most of the point of our context, which is a receipt of stolen property offense and comparing it to aggravated felony theft, is the Ninth Circuit decision in Shamook that we cited in our brief. That's basically an identical context to here. There was a Washington state offense for possession of a stolen vehicle. It also had a statute that had knowingly. And the knowingly was then defined to include reasonable grounds to believe that something exists, which again, Judge Scudder and Easterbrook, it sounds like it could be either. But Washington state law clarified that that offense required actual subjective knowledge. But has Kentucky law clarified on which side of this line that phrase stands? We think the combination of held to know being derived from a situation where a reasonable person would have known and the Conyers decision reciting the standard as knowledge gives you that clarification. But I take your point, Judge Easterbrook, that we would not be putting any weight on Martin to clarify Griffin. Martin doesn't do much twice, but it cited it ambiguously. It did, Your Honor. And I think Martin's problematic for a few reasons. It's just a different context. It's talking about a different context. It's talking about a constitutional claim. Not just that, but it's a different constitutional claim by treating reason to believe the same as actual knowledge. Yes, Your Honor, except the first point of different context is that it's a different knowledge definition. So that's not the same knowledge definition we're talking about in this case. That knowledge definition actually did use language knowledge or should have known. So the whole case turned on, yes, the different legal context. It was campaign finance violation and first amendment challenge, but it was also a different statute altogether. So you're saying this knowledge goes under what, 501.030? Yes, that's the one in our case. And Martin interpreted something else? I think it was 11020, I believe, or I might be getting the subsection wrong. But this one is 030. Yes, that's right. And then it's just the final point. The second point that reinforces the first is that by carving out in this statute an intent to restore, it sort of just broadly underscores that the gist of this statute as Kentucky has consistently described it is an intent to deprive. And that's why the Kentucky Supreme Court in Jackson said that this is just like theft. Receipt of stolen property is just like theft. Knowingly receiving property that was stolen is the same as stealing property. Both of them include an intent to permanently deprive. If there are no further questions, Mr. Court, I deny this petition. Thank you. Thank you. Ms. Arnwell-Davis, anything further? Yes, Your Honor. In this court's decision in Najera, this court has said that there has to be a clear indication from the Kentucky State Supreme Court when the government is cobbling together dicta from unpublished cases. That is not a clear indication. And when we do look at the published decisions from the Kentucky Supreme Court, so when we do go look at Griffin and when we do go look at Lawson, those cases indicate that this is not an ostrich situation. This is a where it's an objective standard. And unless the government can point to something beyond unpublished decisions and hints in other cases. The thing that I would point to would be Martin. But it didn't sound like the Attorney General's lawyer is relying on Martin. In Kentucky, Your Honor? Yes. I think that's right. And I do think it is correct that it does go to a different statutory interpretation definition of knowingly. The final point that I'd like to make is acknowledging that it is an unpublished decision. Benton illustrates how the Kentucky Supreme Court is applying the statute to real facts. And it separates out facts that it says go to having reason to believe. And it talks about would an individual be aware? This is the problem with unpublished decisions. What comes around goes around. I understand. Understood. Okay. Well, those are my points. We ask that you grant the petition. Thank you very much. Thank you very much to both counsel. The case is taken under advisement and the court will be in recess.